**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**
**AT JACKSON**
**APRIL SESSION, 1998**

FILED

April 13, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **No. 02C01-9709-CC-00372** |
| **Appellee** | ) | |
| | ) | **HARDIN COUNTY** |
| **vs.** | ) | |
| | ) | **Hon. C. Creed McGinley, Judge** |
| **SCOTTY WAYNE WHITE,** | ) | |
| | ) | **(Burglary)** |
| **Appellant** | ) | |

For the Appellant:

**Richard W. DeBerry**
Asst. Public Defender
P. O. Box 663
Camden, TN  38320

For the Appellee:

**John Knox Walkup**
Attorney General and Reporter

**Marvin E. Clements, Jr.**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**G. Robert Radford**
District Attorney General

**John Overton**
Asst. District Attorney General
601 Main St., Hardin Co. Courthouse
Savannah, TN  38372

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## O P I N I O N

The appellant, Scotty Wayne White, appeals as of right his conviction for burglary, a class D felony. Following his conviction by a jury, the Hardin County Circuit Court sentenced the appellant as a range II, multiple offender to seven years incarceration in the Tennessee Department of Correction. On appeal, the appellant first contends that the evidence was insufficient as a matter of law to convict him of burglary. In his second issue, the appellant contends that the appellant's sentence of seven years is excessive based upon the court's improper weighing of the mitigating factor applied.

After review, we affirm.

## Background

At approximately 10:00 p.m. on the evening of July 19, 1996, as he was leaving his residence, Officer Mike Moncher of the Savannah Police Department heard the sound of a burglar alarm. He followed the sound of the alarm to the K & M Market where he discovered that the business's plate glass window had been broken. He called for a back-up unit. While waiting for the unit to arrive, Officer Moncher observed a trail of blood which he followed to the north end of the building and finally to a grassy area. When he reached this point, he stopped and waited at the market for the other officers to arrive. Captain Donald Derr was the first officer to arrive at the K & M Market. While en route, he saw a man walking down a nearby street. After Captain Derr arrived on the scene, he and Officer Moncher entered the building. Inside, they found broken glass, blood on the ground, and a four foot long piece of lumber with glass embedded in it. The officers secured the evidence, which included blood samples, and took photographs of the crime scene and its surrounding area. The officers then left instructions with the emergency room at the local hospital to inform them if anyone arrived in need of treatment for a bleeding wound. Around 11:30 p.m.,

2

they were notified that a man with a severe laceration to his knee was being treated at the local emergency room. Captain Derr and Officer Moncher, as well as another uniformed officer, proceeded to the emergency room and spoke with the appellant. In addition to the knee injury, the officers observed a cut on his forehead, small scrapes or cuts around his left eye, and another cut on his right ankle. The appellant told Captain Derr that his knee injury occurred when he fell on a metal post or pipe in his backyard. Captain Derr then reminded Officer Moncher of the person he had observed walking down the street when he was en route to the K & M Market. The officers returned to the street, found a blood trail, and followed the trail "pretty much drop by drop" until the trail ended "on the front porch of Scotty White's residence." Next, the officers returned to the intersection and followed the trail of blood backwards to the same grassy field where Officer Moncher had first tracked the blood when he followed the trail from the north end of the K & M Market. The officers then went to the appellant's home and, when no one answered the front door, they proceeded around to the back door of the house. While in the backyard, Captain Derr shined his flashlight throughout the yard and saw no metal post. Moreover, the officers found no blood in the backyard. The officers asked the appellant to give a blood sample and the appellant refused. The officers then obtained a search warrant ordering the appellant to provide a blood sample, which he refused. Due to hospital policy which did not allow hospital employees to take blood without the consent of the donor, the officers were unable to obtain a blood sample from the appellant.

Mike McCullough, a Hardin County ambulance driver, testified that he examined the appellant at the appellant's residence on the night of July 19, 1996, at approximately 10:57 p.m. He stated that the appellant informed him that he had cut himself on a piece of tin in his backyard. McCullough went to the backyard in order to determine the cause of the appellant's injury and saw nothing in the backyard that would have injured him. Despite McCullough's urging, the appellant refused to go to the hospital for treatment.

3

The appellant's mother testified that she drove to the appellant's home on the night of July 19, 1996, around 10 p.m., when her daughter-in-law called to inform her that the appellant had been injured. While there, she stated that she observed blood in the appellant's backyard. The appellant's wife, Renee White, testified that she convinced the appellant to go to the emergency room. She further admitted that she gave police officers two different versions of the cause of the appellant's knee injury. Ms. White first informed the police that her husband had been injured in a fight. Later she changed her story and advised the police that her husband injured his knee when he tripped over a wire in their backyard while "fixing a dog pen." She explained that his head injuries occurred earlier that summer when "[h]e busted his head swimming, diving off in shallow water."

At the close of the testimony, the jury found the appellant guilty of burglary. At the sentencing hearing on June 4, 1997, the trial court applied two enhancing factors and one mitigating factor in determining the appellant's sentence. The trial court then sentenced the appellant to seven years in the Department of Correction as a range II, multiple offender.

## Analysis

### I. Sufficiency of the Evidence

In the appellant's first issue, he contends that the evidence is insufficient as a matter of law to support his conviction for burglary. In essence, the appellant asserts that the jury should have accredited the testimony of his wife and mother instead of the evidence presented by the State; he also contends that the blood trail leading from the site of the burglary to his house was merely circumstantial evidence. When reviewing a trial court's judgment, the appellate court will not disturb a verdict of guilt unless the facts of the record and inferences which may be drawn from it are insufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

4

In other words, this court will not reevaluate or reweigh the evidence brought out at trial. It is presumed that the judge or jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The credibility of the testimony of the witnesses is entrusted exclusively to the jury as the trier of facts. Sheffield, 676 S.W.2d at 547. Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. Grace, 493 S.W.2d at 476.

Furthermore, a crime may be established by circumstantial evidence alone. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987). However, before an accused may be convicted of a criminal offense based only upon circumstantial evidence, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971).

In this case, the jury heard the evidence presented that the blood trail led from the site of the burglary to the appellant's front door. The jury also accredited the testimony of the State's witnesses that no blood nor metal post was evident in the appellant's backyard. Moreover, the jury in this case, as the exclusive judges of the credibility of the witnesses, had the right to disregard, in large part, the testimony of the appellant's wife, based upon her impeachment by prior inconsistent statements. The overwhelming evidence establishing the appellant's guilt supports the jury's conclusion that he entered a building, other than a habitation, without the consent of the property owner and with the intent to commit a felony. Tenn. Code Ann. § 39-14-402(a)(1) (1990). We find this issue to be without merit.

**Sentencing**

Second, the appellant contends that the trial court "did not give enough weight" to the applied mitigating factor at sentencing. The appellant contends that he should receive a lesser sentence than that imposed by the trial court because his crimes did not involve "personal injury," "threat[s]," or "danger to anyone." Review, by this court, of the length, range, or manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d)(1990). This presumption only applies, however, if the record demonstrates that the trial court properly considered relevant sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this case, we find that the presumption applies. In reference to the appellant's contention that the trial court misweighed the applicable mitigating factor, the legislature has left the weight of the applicable factors to the guided discretion of the trial court when "balancing the relative degrees of culpability within the totality of the circumstances of the case involved." See State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986). Thus, the weight afforded the mitigating factor by the trial court does not constitute error. State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996).

The appellant received a sentence of seven years imprisonment for his conviction of burglary. The record establishes that the trial court initially found that the appellant was a range II, multiple offender, based on four prior felony convictions, three for burglary and one for violation of the Motor Vehicle Habitual Offender Act. Tenn. Code Ann. § 40-35-106(a)(1)(1990). Thus, the applicable sentencing range for the burglary conviction was four to eight years. Tenn. Code Ann. § 40-35-112(b)(4)(1990). The court applied two enhancing factors: (1) Tenn. Code Ann. § 40-35-114(1)(1996 Supp.), that the appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range and (2) Tenn. Code Ann. § 40-35-114(13)(C)(1996 Supp.), that the appellant committed the burglary while he was on probation. The court noted that the appellant had committed three

6

burglaries in less than three years and had committed "a host of misdemeanors." The court found one mitigating factor, that the appellant's conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1)(1990). The court further stated that, because of the appellant's prior criminal history and his failed attempts at rehabilitation, he was not a suitable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-103(1)(C)(1990). The court then sentenced the appellant to seven years imprisonment, one year less than the maximum sentence for a range II offender. We find that the trial court followed appropriate sentencing principles. Accordingly, no sentencing error is found. This issue is without merit.

The judgment of the trial court is affirmed

_____
DAVID G. HAYES, Judge

CONCUR:

7

_____
WILLIAM M. BARKER, Judge


_____
JOE G. RILEY, Judge